NATIONAL BUILDING, LOAN AND PROVIDENT ASSOCIATION, a corporation of the State of Delaware, *vs.* JAMES ALFREE and SUSAN ALFREE, his wife, MORTGAGORS.

1. REFERENCE—APPOINTMENT OF REFEREES.

Where a rule appointing referees described them as three judicious and impartial citizens, it was not objectionable because it did not describe them as "three indifferent referees," as designated in *Rev. Code* 1852, amended to 1893, *p.* 859, *c.* 116, § 1.

2. REFERENCE—RULE OF REFERENCE—TIME.

That a rule referring matters in controversy to referees stated no time for the hearing was not material, where the parties appeared and a. hearing was duly had.

3. REFERENCE—MAKING OF AWARD—ABSENCE OF PARTIES.

After hearing matters submitted to referees, it was proper for them to hold the matter under consideration to a subsequent day, and make their award in the absence of the parties.

4. REFERENCE—INDIFFERENT REFEREE.

A referee was not disqualified as an "indifferent referee" because he had been previously employed by plaintiff association to audit its accounts, where it did not appear that such referee or his associates were influenced by the audit so made.

5. BUILDING AND LOAN ASSOCIATIONS—MORTGAGES—PAYMENT.

Defendant, a borrowing member of plaintiff building and loan association, subscribed for ten shares of stock and later procured plaintiff to pay him the surrender value on certain of the shares, including two assigned as collateral security for the payment of the mortgage debt, on his assigning in lieu thereof two junior shares as collateral security. Such surrender value

was not assigned as a payment on the mortgage, but was paid to defendant as money due on his surrendering the shares. *Held* that, as a borrowing member, the monthly dues paid on the two shares originally assigned as collateral security, together with the dues paid on the additional shares, did not *ipso facto* become payments on the mortgage; and hence a contention that by reason thereof the mortgage had been paid and was held to secure a different indebtedness was unsustainable.

(<em>December</em> 2, 1913.)

Judges BOYCE and RICE sitting.

*William H. Cooper, Jr.*, and *Alexander B. Cooper*, for defendant.

*David J. Reinhardt* for plaintiff.

Superior Court, New Castle County, November Term, 1913.

ACTION SCIRE FACIAS (No. 39, May Term, 1912) by the National Building, Loan and Provident Association against James Alfree and wife to foreclose a mortgage. Referred to referees. On exceptions to the report of referees. Dismissed, and award confirmed.

Pleas, *nil debit*, payment, and accord and satisfaction. Replications and issues joined. Upon application of the parties made to the court at the September term, 1913, this case was referred to referees to be named by the prothonotary. On October 16, 1913, the rule of reference was issued by the prothonotary with three referees named by him therein, whom he described as "three judicious and impartial citizens," and "who", according to their report, "having met the parties, etc., heard their allegations, examined the papers and evidence produced, and maturely considered the same," made their award in favor of the plaintiff, and against the defendant for the sum of three hundred and eighty-six dollars and fifty-two cents, with lawful interest from the twenty-seventh day of October, A. D. 1913, the date of the hearing. The referees made return of the rule of reference with their award indorsed thereon to the succeeding November term of court. Whereupon counsel for the defendant filed exceptions to the award, and moved that the same be set aside, and that the rule of reference be vacated. The character of the exceptions and of the objections urged against judgment on the award sufficiently appear in the opinion of the court.

BOYCE, J., delivering the opinion of the court:

[1]  In disposing of the exceptions and motion now before the court we have this to say: *First*, as to the objections against the record, it was urged that the rule of reference should have described the referees named therein as "three indifferent referees," in the language of the statute (*Section* 1, *Chapter* 116, *Revised Code* 1852, amended to 1893, *p.* 859), instead of "three judicious and impartial citizens." We think the description is a substantial compliance with the statute, under which "every person, not exempt from serving as a juror may be named as a referee in a rule of reference entered in court," such as this is, "and required to serve as such."

By the rule of reference it appears that "all matters in controversy" between the parties were referred, and it was urged that matters in dispute *not in the case* were heard without a special order of the court, but it clearly appears that only matters in dispute *within* the action were heard.

[2, 3]  It was further urged that no time was stated in the rule of reference for the hearing. It is not controverted that the parties appeared and that a hearing was had as is shown by the report of the referees. The appearance of the parties cured this defect relied upon. With respect to the objection that the award was made at a time subsequent to the hearing, and in the absence of the parties we may say that it was competent for the referees to hold the matter under consideration to some subsequent day for their award. It was not necessary that the parties should be present on that day.

[4]  It was excepted that one of the referees was not an "indifferent referee" for the alleged reason that he had been employed by the plaintiff association to audit the accounts of the plaintiff and the defendant, and that the referees had based their judgment upon such audit in making their award. It appears that the referee objected to had several years before made a general audit of the books of the plaintiff association. It does not appear that either he or his associates were influenced in any way by the audit so made. The fact that the plaintiff made such an audit did not disqualify him from serving in this case.

[5] The substance and effect of several of the exceptions, stated in varying forms, is that the mortgage sued upon had been fully paid to the plaintiff and is now held for an indebtedness subsequently incurred and which was not secured or intended to be secured by the mortgage—that is, that the mortgage was held for advances made after the debt secured by the mortgage had been fully paid. It is conceded that the defendant, from first to last, subscribed for ten shares of stock of the plaintiff association. The proof is that, two or three years later, the defendant, through his then attorney, prevailed upon the plaintiff association to let him have the surrender value on certain of the shares of stock, including two shares which he had assigned as collateral security for the payment of the money secured by the mortgage, on his assigning, in lieu thereof, two junior shares of stock as collateral security; that the surrender value of these shares of stock was not applied in any sense to the payment of the mortgage, but was paid to the defendant, upon his request, as money due him upon surrendering said shares of stock; that the transaction was not understood or intended to affect the mortgage or the debt thereby secured.

It appears from the evidence that the only question before the referees was the balance due on the original and only loan secured by the mortgage.

From statements made by counsel for the defendant it would seem that the latter thought when he received the surrender value of his said stock, that he was incurring a new indebtedness to the plaintiff. As a borrowing member, the monthly dues paid on the two shares of stock originally assigned as collateral security, to say nothing about the dues paid upon the additional shares of stock held by him, did not *ipso facto* become payments on the mortgage. The only payments made upon the mortgage were the payments of monthly interest. When the defendant requested and received the surrender value of the shares of stock which he did surrender, including the surrender value of the two shares of stock originally assigned as collateral security for the payment of the mortgage debt, he did not receive any moneys which by the law of Building Loan Associations had become applicable to and

in discharge *pro tanto* of the mortgage. And in receiving the same, he did not incur any new indebtedness to the association. He simply requested and received his own—the cash surrender value of his shares of stock not pledged for the payment of the mortgage, and, by permission of the association, was permitted to have the cash value of the two shares which he had originally assigned as collateral security upon his assigning two new shares as collateral. No part of the mortgage was paid, nor was any new indebtedness created by this transaction. From the hearing on the exceptions it is manifest that the mortgage sued upon is not held for advances made to the defendant after the mortgage debt, or any part thereof, had been paid.

The exceptions are dismissed, and the award of the referees is confirmed.